# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

PATTI R. DUNNE,

      PLAINTIFF,

v.                             CASE NO.: CV-02-J-2282-S

REGIONS BANK,

      DEFENDANT.



ENTERED

SEP 3 2003

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 22), evidence in support of said motion (docs. 23 and 24) and memorandum in support of their motion, to which the plaintiff has responded by a response in opposition to said motion. The defendants thereafter filed a reply. The court having considered the pleadings, evidence and memoranda of the parties finds as follows:

### I. Factual Background

Plaintiff sues her employer for violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq.*, and the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.*, and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* Amended Complaint, ¶¶ 1, 25; plaintiff depo. at 82-83. Plaintiff began working for the defendant in May, 1998. Amended Complaint,

¶ 6; plaintiff depo. at 20. Her immediate supervisor was Paul Lloyd.[1]  Plaintiff depo.

at 20. His supervisor was David Herring.  *Id.* at 75.  Plaintiff's job eventually became

an Employment or Recruiting Specialist, II, and a Team Leader.  Amended Complaint,

¶¶ 7, plaintiff depo. at 22, 210; Lloyd depo. at 8-9.  The plaintiff declined a co-

supervisor position because she was told it was more work for the same amount of

money.  Plaintiff depo. at 249-250, 252-254, 260-263, 274; Lloyd depo. at 20-21, 35-

36.  After plaintiff declined this position, defendant hired Rachel Mayo for the

position of Recruiting Supervisor. Amended Complaint, ¶ 9.  Mayo was 26 years old

at the time defendant hired her and less experienced than the plaintiff.  *Id.*  Lloyd told

the plaintiff he hired Mayo rather than make plaintiff supervisor because she was a

good recruiter and he wanted to keep her as a recruiter.  Plaintiff depo. at 269.  Lloyd

stated he did not consider the plaintiff for a supervisory position because she declined

the co-supervisor position.  Lloyd depo. at 33.  However, he also stated that the

plaintiff had previously expressed an interest in becoming a supervisor and they had

discussed it.  *Id.* at 46-47, 65.

The plaintiff spoke with Connie Heald, also a recruiting specialist, about Heald

accepting such a supervisory position.  Plaintiff depo. at 255-259.  Heald is about the

---

[1]Lloyd was the employment center manager.  Lloyd depo. at 7.

same age as plaintiff. Heald also declined that position. *Id.* at 257. She was not offered the salary Mayo received either. Lloyd depo. at 39-40.

The position of Recruiting Supervisor was never posted, but the position of Recruiting Specialist II was posted. Lloyd depo. at 26-27. Mayo was given the same job title as the plaintiff as well as additional supervisory responsibilities. Lloyd depo. at 29. Lloyd testified that the plaintiff could not receive a raise for becoming co-supervisor because she would have the same title, but Mayo started at a higher salary with the same title because of the additional duties. *Id.* at 36-37. However, he agreed that the letter sent to Mayo offering her the position of Recruiting Specialist II does not mention supervisory duties. *Id.* at 90; Exhibit 10 to Lloyd depo. Lloyd agreed that the plaintiff had more experience in recruiting than Mayo and that defendant's policy was to promote from within. Lloyd depo. at 56-57; Rhegness depo. at 21-22, 28.[2] Mayo was paid significantly more in this position than the plaintiff earned. Lloyd depo. at 32. Her higher salary was based on the additional supervisory responsibilities the position carried. *Id.* at 32. The plaintiff was never offered the position for which Mayo was hired. *See e.g.,* Rhegness depo. at 114. The plaintiff learned Mayo's starting salary from Suzette Williams, and employee in defendant's

---

[2]Rhegness is the regional human resources director for the central region (Alabama, Tennessee and the Florida panhandle). Rhegness depo. at 9. She became Lloyd's supervisor when Herring retired in November 2001. *Id.* at 15-16.

payroll department.  Plaintiff depo. at 45, 53.  The plaintiff, in the course of her

regular duties, was frequently in the payroll department.  Plaintiff depo. at 47-48, 56.

After defendant hired Mayo, plaintiff requested and received six weeks off for

surgery.  Plaintiff depo. at 119-121.  Before she started that leave, the plaintiff

complained to Michelle Rivers and Beth Rhegness in the Human Resources

Department that she was denied a promotion, was discriminated against based on her

age, and was being harassed for requesting leave under the FMLA.[3]  Amended

Complaint, ¶ 12; plaintiff depo. at 204-205. This was the 7th or 8th of January, 2002.

Rhegness depo. at 44.

Notes from a February 12, 2002 meeting with Lloyd and Michelle Rivers reflect

Rivers had concerns with Lloyd's judgment, and that the position he offered the

plaintiff was not the position for which he hired Mayo.  Exhibit 8 to Lloyd depo.

Additionally, the notes reflect that Mayo was not qualified for the position.  Exhibit

8 to Lloyd depo.

On February 14, 2002, while on leave, the plaintiff was asked by Beth Rhegness

to take an additional week of paid leave. Plaintiff depo. at 140, 149-150.  She was told

this was for the convenience of defendant.  *Id*. at 151, Rhegness depo. at 54-55.

---

[3]Rivers was corporate human resources employment/employee relations manager.
Rhegness depo. at 37.  She and Rhegness both reported to Michael Head, the corporate HR
director.  Rhegness depo. at 37-38.

4

The plaintiff was told to attend a meeting on February 20, 2002, Rhegness and Rivers told the plaintiff their investigation found no evidence of discrimination. Plaintiff depo. at 230-231, 291. She was then told that Rhegness would be over her department and that, unrelated to her complaints of discrimination, she was receiving a raise to earn the same as Mayo and would share duties with Mayo. Amended Complaint, ¶ 14; plaintiff depo. at 201, 231-232; Lloyd depo. at 41-42, 54-55; Rhegness depo. at 64. The plaintiff asked during this meeting why she did not receive the promotion and was told they did not know. Plaintiff depo. at 232. She was also told during the February 20 meeting that her new salary and Lloyd and Mayo's position changes were confidential. *Id.* at 232, 292. After that meeting, the plaintiff told a co-worker, Richard Searson, that Rhegness was now going to be their supervisor and make some changes, which would be announced to all the following Monday. *Id.* at 163-164. She did not tell him about her raise and did not tell him about Mayo's new job duties. *Id.* at 238-239. She did tell him she had made a complaint. *Id.* at 245-246.

The plaintiff returned to work on February 25, 2002. Amended Complaint, ¶ 15. When she returned, her voice mail had been turned off, her desk was cleared, and no work was available. Plaintiff depo. at 194. She was told she had no work so she could adjust to being back at work. *Id.* at 196. Additionally, a number of supervisors

would not speak to her or look at her, leading the plaintiff to believe her termination

had already been planned. *Id.* at 194-196. On February 27, 2002, the plaintiff went

to a meeting with Rhegness and Rivers at which she was told she had breached

confidentiality and was terminated.[4] *Id.* at 198, 236. She was not told what she had

said to breach confidentiality. *Id.* at 247, 292-293. However, Rivers' notes from that

meeting show that the plaintiff was asked if she told Searson she filed a complaint.[5]

Exhibit 17 to plaintiff depo. She asked if she could be transferred to another

department and was told no. Plaintiff depo. at 237. However, Lloyd testified that he

and Rivers discussed a severance package for the plaintiff after she made her

complaint of age discrimination, while she was out on leave. Lloyd depo. at 49-50,

59. Rivers' notes from their meeting on February 12, 2002, reflect the possibility of

terminating plaintiff being discussed. Exhibits 7 and 8 to Lloyd depo. Lloyd agreed

that his solution to the plaintiff's complaint was to terminate the plaintiff with a

---

[4]While defendant argues the employee handbook discussed "confidentiality," the
plaintiff's unemployment compensation decision reflects that the "evidence in this case does not
show that the claimant violated company policy nor that she showed willful disregard of the
employer's interests." Exhibit 9 to Lloyd depo.

[5]The notes from this meeting reflect that the plaintiff stated she thought Rivers had been
very fair and she was not trying to be malicious or ruin anyone's career. Rhegness stated
Searson knew comments from her meeting with plaintiff. Rhegness depo. at 129. Notes from
the meeting with Searson reflect plaintiff told him what plaintiff testified to – that there would be
some changes. Rhegness depo. at 133-134. Those notes also show that she told him she had
complained of age discrimination. Exhibit 7 to Rhegness depo. Notes from a further meeting
with two women Searson talked to show that he said plaintiff filed an age discrimination
complaint, the rest of the notes show Searson and the two women further speculated about what
the plaintiff might know. Exhibit 8 to Rhegness depo.

severance package. Lloyd depo. at 59-60.  Rhegness denies this. Rhegness depo. at 75.

The plaintiff believes she was terminated for asserting her FMLA rights and because she complained about someone significantly younger than herself being hired for a supervisory position that plaintiff was not given the opportunity to apply for. As to the FMLA leave, the plaintiff claims that she was discouraged from taking the leave and encouraged to return from it early.  Plaintiff depo. at 122, 141-142, 144-145.  She alleges she was asked if she was taking leave at that time because she did not get the promotion.  *Id.* at 141.

Additionally, the plaintiff complained to Lloyd twice that a test she administered to potential hirees was biased against older applications, and that the test should therefore be weighted as the test instructions recommended.  Plaintiff depo. at 101-103, 106.  Lloyd did not allow the plaintiff to adjust the scores as recommended.  *Id.* at 102, 105-106.  In essence, the test was structured in a manner that older bank teller applicants would score lower, preventing the plaintiff from making job offers.  *Id.* at 106-107.

The plaintiff also asserts that a lot of other employees over the age of forty were asked to leave the defendant's employ about the same time that the plaintiff was terminated.  Plaintiff depo. at 112.  Upon her termination, Rivers told the plaintiff she

7

would give her a good recommendation, and that she should not have filed a complaint, but she believed the plaintiff. *Id.* at 280-281. She also told the plaintiff that she did not trust her anymore and was not comfortable working with her. *Id.* at 282; Rhegness depo. at 147-148. Rhegness then testified that plaintiff asked to be allowed to resign, however Rivers' notes from their meeting state plaintiff was asked if she wanted to resign and said no, she would not do that. Rhegness depo. at 180-181; Exhibit 17 to plaintiff depo. *See also* Exhibit 10 to plaintiff depo. at ¶ 6.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v.  Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III.  LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000).  With these standards in mind, the court considers each of the plaintiff's claims.

## A. ADEA

The plaintiff must establish that she was a member of a protected class, she was subjected to adverse employment action, she was qualified to do the job, and she was replaced by or otherwise lost a position to a younger individual. *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir.2000). Assuming plaintiff meets this burden, the defendant must articulate a legitimate, non-discriminatory reason for its employment decision. *Steger v. General Electric Co.,* 318 F.3d 1066, 1075 (11th Cir. 2003). An employer cannot prevail where the "legitimate reason did not sufficiently motivate the employer at the time of the decision." *Id.,* citing *Speedy v. Rexnord Corp.,* 243 F.3d 397, 403 (11th Cir.2001).

The court finds that the plaintiff has produced evidence that she was the subject of age discrimination as a result of Lloyd's actions. However, the court finds that, upon plaintiff's complaint of age discrimination, the plaintiff was restored to the position she sought along with a raise. The plaintiff's complaints do not seem to post-date the concessions made by defendant during the February 20, 2002 meeting. Rather, the plaintiff's complaints after that date focus on retaliation. Therefore, the court shall dismiss this count by separate order.

## B. FMLA (Count V)

The FMLA entitles a covered employee to take up to twelve weeks of leave in a twelve month period for a "serious health condition" of the employee. *Smith v.*

*BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1305 (11th Cir.2001). The FMLA prohibits an employer from interfering with this right. 29 U.S.C. § 2615.

The plaintiff received twelve weeks of leave under the FMLA. Upon her return she was restored to a higher position with additional pay. As the plaintiff has not produced any evidence that her rights under the FMLA were violated, the court shall dismiss this count by separate order.

### C. Title VII Retaliation

To establish a prima facie case of retaliation for engaging in protected activity, the court must use the familiar *McDonnell-Douglas* burden shifting standard. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973).

In a retaliation case, to establish a prima facie case, the plaintiff must show that she (1) engaged in Title VII protected activity; (2) an adverse employment action occurred; and (3) a causal connection between the protected activity and the adverse employment action exists. *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999). *See also Gupta v. Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

The plaintiff here offers two protected activities: taking FMLA leave and complaining of age discrimination. The court finds no evidence that, once the plaintiff began her leave, she suffered any adverse consequences due to that leave. Therefore, all claims related to the plaintiffs FMLA claims shall be dismissed.

As to the plaintiff's age discrimination claims, the court does find making such a complaint to be protected activity. As a result of that activity, the defendant engaged in an investigation. Although the defendant declined to find any discrimination on its part, it did untertake attempts to rectify any perceived discrimination. The plaintiff was apparently satisfied with these attempts. Thus, the sole issue before the court is whether the plaintiff was terminated in retaliation for her complaints of discrimination.

Assuming, without deciding, that the plaintiff could establish a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir. 1996). The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590. 596 (11th Cir.1987). The defendant argues that the plaintiff was not terminated for her complaints of age discrimination. Rather, she was accused of relaying information to co-workers that she had been told not to repeat. The evidence reflects this warning was given to the plaintiff on numerous occasions. The plaintiff's termination for breaching this confidence is a legitimate, non-discriminatory reason for the defendant's actions.

The plaintiff must now demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083. Thus, the burden shifts back to the plaintiff to present evidence rebutting the defendant's stated reason. The evidence does reflect that Lloyd's "solution" was to fire the plaintiff, and this was discussed, before the plaintiff returned from leave. Additionally, evidence supports that Rhegness and Rivers were focused on "minimizing the risk" and "legal liability" to the defendant from this. *See e.g.*, Rhegness depo. at 75-76, 101-102.

However, the fact remains that the plaintiff was instructed not to repeat information she had been given in confidence relevant to her complaint of age discrimination, and violated that instruction. Even though the plaintiff denies having breached the instructions she was given, the defendant's investigation does reflect evidence to support Rivers' and Rhegness' belief that the plaintiff did so. Because the defendant was under a "mistaken but honest impression that the employee violated a work rule," no liability may attach for its subsequent decision based on that mistake. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999); *Jones v. Gerwins*, 874 F.2d 1534, 1540 (11th Cir.1998). *See also Chapman v. AI*

*Transport*, 229 F.3d 1012 (11th Cir.2000).  This court's place is not to second guess the decisions of employers, as long as those decisions are not based on discriminatory reasons.  *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1244 (11th Cir.2001). *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997) ("federal courts do not sit to second-guess the business judgment of employers").

Thus, the court finds that summary judgment must be granted on behalf of the defendant and against the plaintiff on this claim as well.  The court shall do so by separate order.

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment on all counts of the plaintiff's complaint is hereby **GRANTED**.  The claims are **DISMISSED WITH PREJUDICE**.  Each party is to bear its own costs.

**DONE** and **ORDERED** this the _3_ day of September, 2003.


INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

14